IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| CATHERINE BROOKS, ) | |
| ) | |
| Plaintiff, ) | 8:05CV118 |
| ) | |
| v. ) | |
| ) | |
| THE LINCOLN NATIONAL LIFE ) | ORDER |
| INSURANCE COMPANY, a Stock ) | |
| Company, and METROPOLITAN ) | |
| LIFE INSURANCE COMPANY, ) | |
| doing business as METLIFE, ) | |
| acting as Administrative ) | |
| Agent of the Disability ) | |
| Income Insurance Business of ) | |
| the Lincoln National Life ) | |
| Insurance Company, ) | |
| ) | |
| Defendants. ) | |
| ) | |

Plaintiff has moved for sanctions against defendant MetLife and its counsel for their alleged failure to comply with the mediation reference order in this case. Defendants have filed a motion for sanctions against plaintiff for failing to mediate or negotiate in good faith. Affidavits have been filed in support of and in opposition to the motions, and affidavits have also been filed under seal by the mediator, Mr. Michael G. Mullin.[1]

---

[1] The affidavits were filed under seal, and because they disclose confidential matters, they will remain sealed. This Memorandum and Order, however, will not be sealed, as the matters disclosed herein are not confidential. See Mediation Plan Paragraph 4(e) (declaring negotiations confidential, but allowing disclosure related to a motion for sanctions).

There are contradictions in the affidavits, but some facts are not disputed:

> The mediation began at 9:30 a.m. on March 1, 2006 in Mr. Mullin's office with a joint session for a 15- to 20-minute introduction by Mr. Mullin.
>
> Mr. Mullin separated the parties and caucused with the plaintiffs[2] first for approximately thirty minutes.
>
> Mr. Mullin caucused with the defendants beginning at approximately 10:30 a.m.  From Mr. Mullin's affidavit I infer that this caucus lasted at least thirty minutes, perhaps more, at the end of which Mr. Mullin was authorized by the defendants to communicate an offer.
>
> Mr. Mullin then returned to the plaintiffs and did relay defendants' offer.  Mr. Mullin also informed plaintiffs that the defendants' claims representative had a reservation on a 2:30 p.m. flight from Omaha.  (There is a dispute as to whether Mr. Mullin said the representative "hoped" to make this flight and to leave Mr. Mullin's office for the airport at 1:30, or "had" to make this flight and leave the office at 1:30).
>
> Defendant's initial offer was substantially below plaintiff's valuation of the case, and plaintiff's counsel immediately dismissed it as unacceptable, and said plaintiffs would not respond with a counter-demand.  He then reacted to the flight information by "directing" Mr. Mullin to immediately return to the defendants and tell them they had "five minutes to put a 'serious' settlement offer on the table, or that [he] and his client were leaving."  Filing 72, Para. 10.  Mr. Mullin was not given an opportunity to convey or explain the reasoning behind the defendants' offer.
>
> Mr. Mullin did return to the defendants and gave them the message from plaintiff's counsel.  After only a few minutes of discussion, Mr. Mullin was authorized to convey a "box" offer, that is, defendants would raise

---

[2] I refer to plaintiff and her counsel as "plaintiffs" and defendant's claim representative and defense counsel as "defendants," unless otherwise specified.

their offer to a stated amount if plaintiffs would lower their demand to a stated amount.

Mr. Mullin immediately returned to plaintiffs and conveyed the "box" offer from defendants.  Plaintiff's counsel immediately rejected the defendants' proposal, saying it was unworthy of a response.  Mr. Mullin attempted to explain to plaintiffs that defendants did not value the plaintiff's claim at nearly the level being proposed by plaintiffs.  In doing so, Mr. Mullin mistakenly communicated to plaintiff and her counsel that plaintiff's demand exceeded defendant's representative's "authority," instead of  the word "valuation," "thereby apparently giving [plaintiff's counsel] the impression that [defendants' claim representative] did not have full authority to settle the claim."

Upon hearing that, plaintiff's counsel said the defendants were not in compliance with the mediation reference order which required them to have sufficient "authority" to meet the plaintiffs' last demand.  Mr. Mullin did not correct his mistaken use of the word "authority" in response to this statement.  Thereafter, plaintiff's counsel "indicated" that the mediation was over.  He confirmed with the plaintiff that there was no point in going further, and then instructed Mr. Mullin to advise the defendants that he would be filing a motion for sanctions because of defendants' lack of sufficient settlement authority, and plaintiffs left.  The time was approximately 11:45.

Mr. Mullin returned to the defendants and reported that plaintiffs had left.  Defendant's counsel indicated he was considering filing a motion for sanctions because of the plaintiffs' refusal to negotiate.

Nothing in the record before the court indicates what, in fact, the settlement "authority" of the claims representative was, but defense counsel did state it was not sufficient to meet the plaintiffs' last demand, should the representative have decided it was in defendant's interest to do so.  (Filing 78, Para. 17).

This is truly a "coulda, shoulda, woulda" controversy, in which all the players have probably since thought better of their actions.  There were plenty of shortfalls to go around.

First, the lawyers should have been explicit in their pre-mediation communications.  Defense counsel should have told plaintiff's counsel straight out that his client would, in fact, not make any offer anywhere near the demand, and would not give any credence--or money--to the "bad faith" claim.  Leaving it ambiguous allowed plaintiff's counsel to think, wrongly as it turns out, that maybe--with persuasion--he could talk defendant into giving that claim some worth.  Plaintiff's counsel should have sought more clarity on that issue.  Had they both been straight with each other, they could have requested a conference call with the court and/or the mediator and decided how, or whether, to proceed with the mediation.

Second, defendant's counsel should have known exactly what his client's representative's authority limits were.  If they did not comply with the order setting the mediation, he should have either instructed his client to not have the mediation in the first place, or requested a conference with the court.  Having authority does not mean one has to exercise it; however, it does leave room for that circumstance when the opponent does present some new, major information that suddenly shifts the tide in the negotiations.  Those things do happen in mediations, and the court's order is designed to deal with them.  Defendant's representative should have been armed with the authority necessary to deal realistically with such a possibility, instead of unilaterally choosing not to comply with the order, "gambling" that it would not be found out.

Third, plaintiff's counsel had no reason to be surprised that his first demand did not establish an acceptable "ballpark."  If the amount demanded by plaintiff before the mediation could

have settled the case, or even established a meaningful dialogue, it would have happened before the mediation ever began.  Nor should he have been insulted at the defendant's first offer.  Indeed, first demands and first offers are rarely regarded by opponents as totally serious.  Plaintiff's counsel's "directive" to the mediator to instruct the defendants to make a "serious" offer within five minutes was totally inappropriate and, in a word, rude.  Plaintiff's counsel did not even give the mediator or the defendants the courtesy of hearing what the defendants had said were their reasons behind the offer.  Rather than enticing a higher offer--presumably the plaintiff's objective in a mediation--plaintiff's counsel's "directive" that the negotiations would be conducted only on his terms undoubtedly to some extent "poisoned the well" from which plaintiff hoped to drink.  At the least, it made the negotiations more difficult.  As discussed below, counsel's tactic most certainly did not give the plaintiff her counsel's best professional service.  It is to defendants' credit that they overcame their umbrage and made an additional proposal at all.

     Fourth, the mediator, too, made missteps.  Being explicit and clear is extremely important for a mediator.  Obviously, and as he stated in his affidavit, he should have accurately conveyed either "authority" or "valuation," and when plaintiff's counsel sought clarification, should have either confessed right then that he had used the wrong word or alternatively stated that he would go back to defendants and clarify it with them so as to convey the correct information.  His failure to do so left plaintiffs with what might have been a totally erroneous assumption, and in addition, yielded control over the "process" of the mediation.

Plaintiffs' Motion for Sanctions
=====

Assuming that the mediator was accurate in using the word "authority," that exposed the defendants' bluff and clearly gave the plaintiffs grounds to complain.  Although defendants cite my opinions in Dvorak v. Shibata, 123 F.R.D. 608, 609-610 (D. Neb. 1988) and Raad v. Wal-Mart Stores, Inc., 1998WL272879, they apparently did not take those messages to heart.  Defendants' actions placed plaintiffs in a lose-lose dilemma:  Either refuse to negotiate, thereby wasting all the time and money already spent in preparing for the mediation and likely losing any hope of ever settling the case; or proceed to negotiate with the representative who did attend, thereby risking disclosure of facts, strategies, or arguments, possibly undermining plaintiff's positions in the trial as well as in any future negotiations with an authorized representative.

> There are several reasons for requiring the presence of authorized representatives at a settlement conference. During the conference, counsel for both sides are given an opportunity to argue their clients' respective positions to the court, including pointing out strengths and weaknesses of each party's case.  In this discussion, it is often true that client representatives and insurers learn, for the first time, the difficulties they may have in prevailing at a trial.  They must, during the conference, weigh their own positions in light of the statements and arguments made by counsel for the opposing parties.  It is often true that as a result of such presentations, the clients' positions soften to the extent that meaningful negotiation, previously not seriously entertained, becomes possible.  This dynamic is not possible if the only person with authority to negotiate is located away from the courthouse and can be reached only by telephone, if at all.  The absent decision-maker learns only what his or her attorney conveys by phone, which can be expected to be largely a recitation of what has been conveyed in previous discussions.  At best, even if the attorney attempts to convey the weaknesses of that client's position as they have been presented by opposing counsel at the settlement conference, the message . . . loses its

>impact through repetition, and it is simply too easy for that person to reject, out of hand, even a sincere desire on the part of counsel to negotiate further.  At worst, a refusal to have an authorized representative in attendance may become a weapon by which parties with comparatively greater financial flexibility may feign a good faith settlement posture by those in attendance at the conference, relying on the absent decision-maker to refuse to agree, thereby unfairly raising the stakes in the case, to the unfair disadvantage of a less wealthy opponent.  In either case, the whole purpose of the settlement conference is lost, and the result is an even greater expenditure of the parties' resources, both time and money, for naught.

<u>Dvorak v. Shibata</u>, 123 F.R.D. 608, 609-610 (D. Neb. 1988).

>  If a party were required . . . to object or waive any right to sanctions emanating from its opponent's failure to abide by the mediation reference order, such a requirement might well destroy any hope for eventually settling the dispute. I think most people faced with such a circumstance, would find themselves faced with the dilemma of either proceeding and thereby perhaps disclosing some of their strategies and evidence, to their risk and possible detriment, or to stalk out of the meeting, thereby risking their investment in the process of their preparation time and expense.  Faced with such a dilemma, it is reasonable that some would prefer to proceed if possible, in order to salvage whatever "good will" might be produced by negotiating, even with the limitations caused by the absence.  Such a course would be cloaked with reluctance, in all probability, but represents the most viable means to make useful the time, effort, and expense--at that point, already spent--in preparing to negotiate a settlement, gathering the client and counsel and paying for the mediation session.  While, as the discussion below will illustrate, such settlement negotiations are already at that point fraught with difficulty, it is not inconceivable that they could succeed, and in fact, some do. If, however, a party is forced to object, it will object, thereby nearly ensuring an unsuccessful result to the process.  I therefore conclude that the plaintiff's proceeding [to negotiate], in an attempt to make the mediation session productive, despite the absence of defendant's authorized representative, should not disqualify the plaintiff from receiving an award of sanctions.

<u>Raad v. Wal-Mart</u>, 1998WL272839, slip op., at 3-4.

Conversely, plaintiffs' decision to not continue this mediation does not foreclose an award of sanctions, either, and plaintiffs' objection is well taken in this instance. The "evils" of failing to have the requisite authority present at the mediation occur regardless of what the ultimate outcome of the mediation session was or might have been. <u>Id.</u> at 4-5.

Plaintiff's motion for sanctions will be granted only in part, however. It is clear from defendants' offers that they were attempting to negotiate in good faith, even though that effort was thwarted.

<u>Defendants' Motion for Sanctions</u>

Defendants' failure to send a representative with proper authority, however, did not excuse plaintiff's counsel's walking out of the mediation. There are many ways to raise such an objection civilly, and even to terminate a mediation session, if necessary; unilaterally pronouncing the mediation "over" and walking out is not one of them.

Defendant's counsel's affidavit stated that Mr. Mullin reported to defendants that Mr. White had "exploded" upon hearing the defendants' first offer. Filing 78, Para. 14. Mr. White correctly objects to this hearsay characterization of his actions. Mr. Mullin's affidavits describe Mr. White as having "indicated that the offer was unacceptable, and he would not respond to it." Filing 72, Para. 10. He also described Mr. White as "visibly angry," but "despite his obvious anger, Mr.

8

White did not engage in any conduct such as banging on the table or throwing objects.  He spoke in a stern voice, but did not, at any time, engage in any yelling or shouting." Filing 96, Para. 7.  Nevertheless, "directing" a mediator to return to one's opponents in a mediation and deliver an ultimatum for a "serious" offer within five minutes can hardly be described as courteous.

After receiving defendants' second offer, Mr. White was "again visibly angry to the point of concluding further settlement negotiations.  However, once again at no time did Mr. White shout, bang the table, or throw any objects." Filing 96, Para. 8.  It was the mediator's impression that Mr. White's anger was directed "at the information that had been communicated to him"; both plaintiff and Mr. White were respectful at all times; and as plaintiff and Mr. White were leaving, Mr. White shook Mr. Mullin's hand and thanked him, and both left his offices "in an orderly manner."  Id.  Plaintiff's affidavit describes Mr. White's behavior as "polite," "professional," and "cordial." Filing 98, Exhibit 4.  Mr. White described his own behavior as "remain[ing] seated," "polite," "courteous[]," and "civil." Filing 98, Exhibit 3, Para. 6-8.

Regardless of counsel's demeanor, his rejection of defendant's two offers out of hand--without even allowing the mediator to explain them--was unnecessarily confrontational, professionally discourteous, and demonstrated a lack of good faith.  Not only did plaintiff's counsel refuse to negotiate in good faith, he refused to negotiate at all.  Nor did he confirm with defendants his belief that they had violated the court's order regarding authority, and he took no action to attempt to salvage the mediation by discussing it with defendant's counsel

or requesting that the representative seek and obtain the requisite authority then and there.

    Mr. White knew before the mediation that it would take a persuasive argument to make defendants see it as in their interest to give any value to the bad faith claim. It could have been no surprise that defendants' offers reflected that position, and was certainly no reason to be "angry." After all, he had to that point made no effort to convince them otherwise. In such circumstances, dismissing one's opponents' two significant offers as unworthy; demanding a "serious offer" within five minutes; threatening to leave if they didn't comply; and not even trying to persuade the opponents to alter their positions, were abusive to the opponents and to the mediation process. By refusing to participate further, he may have in fact entrenched his opponents' position. His actions robbed his client of possibly her best opportunity to convince defendants they should re-evaluate her claims, to learn her opponents' side of the dispute, to negotiate a settlement, or even to be heard, perhaps, it may turn out, to her considerable detriment. Defendants' motion will also be granted in part.

    NEGenR 1.8 (e) establishes the courts Policy on Uncivil and Unprofessional Conduct and procedures for its enforcement. It provides, in part:

> . . . [T]he conduct of judges and lawyers should be characterized at all times by personal courtesy and professional integrity in the fullest sense of those terms.
>
> * * *
>
> *Conduct that may be characterized as uncivil, abrasive, abusive, hostile, or obstructive impedes the*

> *fundamental goal of resolving disputes rationally, peacefully, and efficiently, and such conduct tends to delay and often to deny justice.*

The descriptions of plaintiff's counsel's conduct recited in the affidavits before this court on these motions raise serious implications concerning his conduct at this mediation.  Rather than delve more into such unseemly matters at this time, I shall admonish plaintiff's counsel for his conduct, and direct him to apologize, in writing, to plaintiff, defendants' representative, defendants' counsel, and the mediator, in addition to other sanctions.  Counsel is further admonished that if in the future similar behavior is brought to the attention of the court, contempt and/or other, more serious sanctions will be considered.

    IT THEREFORE HEREBY IS ORDERED:

    1.  Plaintiff's motion for sanctions, filing 63, is granted in part.  Defendants and defendants' counsel shall jointly pay to plaintiff the sum of $200.00 as partial payment for the fees and expenses in preparing for and attending the mediation and preparing and presenting this motion to the court.  This award shall be made a part of any judgment eventually entered in this case, unless, prior to the entry of judgment the clerk is notified that the award has been paid, accompanied by written evidence of payment.  The motion is denied in all other respects.

    2.  Defendants' motion for sanctions, filing 76, is granted in part.  Plaintiff's counsel shall, within ten days, send letters of apology to the plaintiff, the mediator, the defendants' representative (through counsel), and the defendants' attorney, and shall send copies of the letters of apology to the undersigned magistrate judge.  In addition, counsel shall, as soon as practicable but within the next six months, enroll and complete an educational seminar or course in how to represent a client at a mediation, and shall file proof of his attendance and completion of it.  Finally, plaintiff's counsel shall, within ten days, serve his client with a copy of this memorandum and order, and shall file a certificate of service showing he has done so.  The motion is denied in all other respects.

  3, The clerk shall send a copy of this memorandum and order to the other judges of this court, and to the mediator.

  4. Plaintiff's counsel's request for oral argument and for permission to send the judges copies of the affidavits filed in this matter are denied.[3]

  DATED this 14th day of June, 2006.

          BY THE COURT:

          s/ *David L. Piester*
          David L. Piester
          United States Magistrate Judge

---

[3] The judges have access electronically to all sealed filings, so counsel need not send more copies; this memorandum and order will serve as notice to the judges that such filings have been made.