IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | | |
|---|---|---|
| CATHERINE BROOKS, | ) | CASE NO. 8:05CV118 |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | **MEMORANDUM AND ORDER** |
| | ) | |
| THE LINCOLN NATIONAL LIFE INSURANCE COMPANY, a Stock Company, and METROPOLITAN LIFE INSURANCE COMPANY, doing business as METLIFE, acting as Administrative Agent of the Disability Income Insurance Business of the Lincoln National Life Insurance Company, | ) ) ) ) ) ) ) ) ) | |
| Defendants. | ) | |

This matter is before the court on plaintiff Catherine Brooks's (Brooks) appeals (Filing Nos. 107 and 109) of United States Magistrate Judge David L. Piester's June 14, 2006, Orders (Filing Nos. 103 and 104). Following review of Brooks's appeals, the briefs in support thereof, the defendants' brief in opposition, and the record on the matter, the court denies Brooks's appeals and affirms the magistrate's Orders.

I.   **BACKGROUND**

This case arises out of a disability insurance contract dispute. Brooks claims she owns a disability insurance policy issued by defendant Lincoln National Life Insurance Company (Lincoln Life) and is entitled to receive residual disability benefits under the policy.

According to Brooks's Amended Complaint, Lincoln Life issued Brooks an insurance policy (the Policy) in August 1991. (Am. Compl. at ¶ 4). Brooks was seriously injured in an automobile accident in November 1992. (Id. at ¶ 5). As a result, Brooks began to receive total disability payments under the Policy. (Id.). Brooks claims she received those payments until August 1993. (Id.). Brooks, however, contends her injuries continued beyond that time and, eventually, she became unable to maintain a full-time job. (Id. at ¶ 6). Brooks claims

her salary was reduced by 50% in June 1999. (Id.). Consequently, Brooks applied for residual disability benefits under the Policy. (Id. at ¶ 7). Brooks began receiving those payments in April 1999. (Id.). However, in June 2001, Brooks claims defendant Metropolitan Life Insurance Company (MetLife), as agent for the defendant Lincoln Life, notified Brooks the residual benefits would cease. (Id. at ¶ 9). Brooks appealed defendants' decision to end her benefits, but defendants denied her appeal. (Id. at ¶ 10).

On February 22, 2005, Brooks filed a complaint against defendants in the District Court of Douglas County, Nebraska, claiming defendants' decision to discontinue her residual disability benefits constituted a breach of contract and bad faith. On March 15, 2005, defendants removed this case to federal court based on diversity jurisdiction.

On January 13, 2006, the magistrate referred this case for mediation and ordered:

> ¶ 2.  Except as otherwise provided herein, all parties and their counsel and any insurance company having an interest shall attend all mediation sessions scheduled by the mediator. At least one person for each party and insurance company shall have full settlement authority. Such persons and entities are further ordered to prepare for and participate in the mediation in accordance with the Plan and in objective good faith.
>
> . . . .
>
> ¶ 5.  The parties and counsel are reminded that the court may impose sanctions, including dismissal of a claim or defense, monetary sanctions, or such other sanctions as may be authorized by Fed. R. Civ. P. 16(f), should such persons or entities fail to comply with this order in objective good faith.

Pursuant to the magistrate's Mediation Order, the mediation commenced at 9:30 a.m. on March 1, 2006. The following facts are not disputed. (See June 14, 2006 Order at 2; Affid. of Michael G. Mullin at 2-6). The mediator, Michael G. Mullin (Mullin), separated the parties and caucused with them–first with Brooks and her counsel, Thomas M. White (White), and then with defendants' counsel, Steven D. Davidson (Davidson), and Metlife

claims representative, Daniel Nussbaum (Nussbaum). After caucusing with defendants, Mullin received authorization to communicate an offer to Brooks. Mullin communicated the offer to White. Defendants' initial offer was substantially below Brooks's valuation of her case. White immediately dismissed the initial offer as unacceptable and indicated Brooks would not respond to it. Mullin also informed White that Nussbaum indicated he had a reservation on a 2:30 p.m. flight from Omaha. White directed Mullin to return to defendants and "tell them that they had five minutes to put a 'serious' settlement offer on the table, or that [he] and his client were leaving." (Affid. of Mullin at ¶ 10). White did not give Mullin an opportunity to explain the reasoning behind defendants' initial offer.

Shortly after relating White's demands to defendants, Mullin received authorization to return to the plaintiff and propose that "Defendants agreed to offer $100,000.00 if plaintiff would then decrease her demand to $425,000.00." (Affid. of Mullin at ¶ 11). White immediately rejected the defendants' proposal stating it was "unacceptable and unworthy of response." (Id. at ¶ 12). Mullin attempted to explain to White that defendants did not value Brooks's claim at the same level White and his client did. However, Mullin did not relate this information to White accurately. In his affidavit, Mullin states:

> Unfortunately, I mistakenly used the term "authority" rather than valuation, thereby apparently giving Mr. White the impression that Mr. Nussbaum did not have full authority to settle the claim.

(Id.). At that point, White replied to Mullin that defendants were in violation of the Mediation Order because it required them to have full authority to settle the claim. (See June 14, 2006 Order at 3; Affid. of White at ¶ 5). Mullin, however, failed to tell White that Mullin had used the word "authority" incorrectly. (Affid. of Mullin at ¶ 12). White advised Mullin the mediation was over and asked Brooks if she agreed to end the mediation. Brooks agreed, and White instructed Mullin to tell defendants he would be filing a motion seeking sanctions against them. White and Brooks then left.

Mullin returned to the defendants and reported that White and his client had left. At that point, defendants indicated to Mullin they would consider filing a motion for sanctions against Brooks based on White's refusal to negotiate. Mullin then told defendants White had indicated he would be filing a motion for sanctions against them. Mullin also told defendants of his mistake in using the word "authority" rather than "valuation" when talking to White.

On March 3, 2006, Brooks filed a Motion for Sanctions, Attorney Fees and Expenses, and for Other Relief and Request for Oral Argument. (Filing No. 63). On April 6, 2006, defendants filed a Cross-Motion for Sanctions. (Filing No. 76). On April 28, 2006, the magistrate entered a Memorandum and Order in which he granted both Brooks's motion and the defendants' motion in part. (Filing No. 84). On May 5, 2006, Brooks filed a Motion for Reconsideration of that Memorandum and Order. (Filing No. 87). On May 10, 2006, The magistrate entered an order granting, in part, Brooks's motion for reconsideration. (Filing No. 93). In his order, the magistrate stated:

> [P]aragraph 2 [imposing sanctions on plaintiff] of the order of April 28, 2006, filing 84, is held in abeyance until further order following reconsideration. The remainder of the motion is reserved for ruling with that reconsideration.

(Id.).

After reconsidering his previous order on the parties' requests for sanctions, the magistrate entered a new order withdrawing and setting aside the previous order. (Filing No. 103). In this new order, the magistrate indicated a new accompanying memorandum and would replace his previous order. (Id.). In the new memorandum and order, the magistrate again determined both parties failed to comply fully with the Mediation Order. (Filing No. 104). The magistrate ordered defendants and defendants' counsel jointly to "pay to plaintiff the sum of $200.00 as partial payment for the fees and expenses in preparing for and attending the mediation and preparing and presenting [Brooks's sanctions] motion to the court." (Id. at 11). The magistrate also ordered:

> Plaintiff's counsel shall, within ten days, send letters of apology to the plaintiff, the mediator, the defendants' representative (through counsel), and the

> defendants' attorney, and shall send copies of the letters of apology to the undersigned magistrate judge. In addition, counsel shall, as soon as practicable but within the next six months, enroll and complete an educational seminar or course in how to represent a client at a mediation, and shall file proof of his attendance and completion of it. Finally, plaintiff's counsel shall, within ten days, serve his client with a copy of this memorandum and order, and shall file a certificate of service showing he has done so.

(Id.).

On June 22, 2006, Brooks filed this appeal arguing the magistrate's order[1] should be reversed because it is clearly erroneous and contrary to law. (Filing Nos. 107 and 109). On July 10, 2006, the defendants filed a brief in opposition to Brooks's appeal, contending magistrate's order should be affirmed. (Filing No. 111). Defendants do not appeal the magistrate's order. For the reasons set forth below, the court finds the magistrate's order imposing sanctions on both parties should be affirmed in its entirety.

II.  **STANDARD OF REVIEW**

On an appeal from a pretrial non-dispositve motion[2] decided by a magistrate judge, the district court must affirm the order by a magistrate judge unless it is clearly erroneous or contrary to law. 28 U.S.C. § 636(b)(1)(A); Fed. R. Civ. P. 72(a). The clearly erroneous or contrary to law standard applies to a review of a magistrate judge's orders imposing sanctions on non-dispositive matters. See Gomez v. Martin Marietta Corp., 50 F.3d 1511,

---

[1] Brooks filed separate appeals and briefs challenging the two orders entered by the magistrate on June 14, 2006. (Filing Nos. 107-110). Because each of Brooks's appeals and briefs in support thereof are identical, the court, to avoid confusion, refers to Brooks's appeals collectively.

[2] Dispositive motions are those motions requesting: (1) injunctive relief, (2) judgment on the pleadings, (3) summary judgment, (4) to dismiss or quash an indictment or information made by the defendant, (5) to suppress evidence in a criminal case, (6) to dismiss or to permit maintenance of a class action, (7) to dismiss for failure to state a claim upon which relief can be granted, and (8) to dismiss an action involuntarily. See Burns v. Imagine Films Entm't. Inc., 164 F.R.D. 594, 599-600 (W.D.N.Y. 1996) (citing 28 U.S.C. § 636 (b)(1)(A) and Federal Rule of Civil Procedure 72 and concluding a magistrate judge has "the authority to determine any preliminary matter not expressly excepted in section 636 (b)(1)(A)"). Because the magistrate's order is not based on the types of motions identified as dispositive, this appeal is from a non-dispositive motion. Id.

1519-20 (10th Cir. 1995). Under a clearly erroneous standard, a district court can reverse a magistrate judge's order only if the court "is left with the definite and firm conviction that a mistake has been committed." See Chakales v. Comm'r of Internal Revenue, 79 F.3d 726, 728 (8th Cir. 1996) (quoting United States v. U. S. Gypsum Co., 333 U.S. 364, 395 (1948)). Under a contrary to law standard, a district court can reverse a magistrate judge's order only if the order fails to apply the relevant law. See Olais-Castro v. United States, 416 F.2d 1155, 1158 n.8 (9th Cir. 1969) ("The term 'contrary to law' means contrary to any existing law") (citing Callahan v. United States, 285 U.S. 515, 517 (1932)).

### III.   DISCUSSION

Brooks claims the magistrate's order should be reversed because it is clearly erroneous and contrary to law. Brooks asserts defendants failed to comply with the Mediation Order and are the only ones who deserved to be sanctioned. Specifically, Brooks claims defendants committed two violations. Defendants' first violation was their lack of willingness to negotiate the entire day–as required by the Mediation Order. Defendants' second violation was their lack of complete authority to settle the claim–as indicated by the mediator. Brooks's counsel claims that, after consulting with his client regarding these two violations, it was determined "they would have more to lose if they continued to negotiate in the mediation." (Brooks's Br. at 3). As a result, Brooks decided to end and abandon the mediation process. Brooks's counsel claims he "at all times acted in a calm and professional manner," entered the mediation in good faith, relied on the Mediation Order, and does not deserve to be sanctioned. (Id.).

The court agrees it was problematic for Brooks to engage in the mediation process because: (1) defendants' counsel indicated to Brooks's counsel, soon after the mediation started, that negotiations would end earlier than the meditation order indicated, (2) defendants' counsel did not tell Brooks's counsel the defendants would not make an offer near Brooks' demand, (3) defendants' counsel should have known exactly what authority defendants' representative possessed, (4) defendants' representative should have possessed the required authority to engage realistically in the mediation process, and (5) the

mediator was not accurate in conveying information to Brooks's counsel.  As the magistrate indicated:

> Defendants' actions placed plaintiffs in a lose-lose dilemma: Either refuse to negotiate, thereby wasting all the time and money already spent in preparing for the mediation and likely losing any hope of ever settling the case; or proceed to negotiate with the representative who did attend, thereby risking disclosure of facts, strategies, or arguments, possibly undermining plaintiff's positions in the trial as well as in any future negotiations with an authorized representative.

(June 14, 2006 Order at 6).

However, as the magistrate also noted, defendants' violations of the Mediation Order do not excuse Brooks's counsel from: (1) indicating Brooks would not respond to the defendants' initial offer and directing the mediator to tell defendants they had five minutes to put a serious settlement offer on the table or Brooks was leaving, (2) indicating defendants' second offer or proposal was unacceptable and unworthy of response, (3) not allowing the mediator to explain the defendants' offers, (4) not engaging in dialogue with defendants' counsel to correct what Brooks's counsel perceived as deficiencies in the mediation process, and (5) unilaterally terminating or abandoning the mediation process. (Id. at 6-10).  This conduct by Brooks's counsel does not reflect that he pursued the mediation process in good faith.

Brooks's counsel contends the magistrate's imposition of sanctions interfered with the attorney/client relationship and with Brooks's right to counsel because he had already determined that continuing with the mediation would injure his client.  The court does not agree.  Here, the magistrate only enforced a court order and sanctioned, under the law, those who failed to obey it.  As previously stated, the court's Mediation Order states counsel is "ordered to prepare for and participate in the mediation in accordance with the Plan and in objective good faith."  (Mediation Order ¶ 2).  The Mediation Order clearly reminded counsel "that the court may impose sanctions, . . . as may be authorized by Fed. R. Civ. P. 16(f), should . . . [counsel] fail to comply with this order in objective good faith."  (Id. ¶ 5).  After considering counsel's conduct, the magistrate determined counsel violated the court's

Mediation Order and imposed sanctions. In making his determination, the magistrate observed:

> By refusing to participate further, [counsel] may have in fact entrenched his opponents' position. His action robbed his client of possibly her best opportunity to convince defendants they should re-evaluate her claims, to learn her opponents' side of the dispute, to negotiate a settlement, or even to be heard, perhaps, it may turn out, to her considerable detriment.

(June 14, 2006 Order at 10). Based on these observations, the magistrate determined defendants' motion for sanctions should be granted. The magistrate's imposition of sanctions is based on Brooks's counsel's failure to obey the court's Mediation Order. Under the Federal Rules of Civil Procedure, failure to obey a court's pretrial order, including a mediation order, constitutes adequate grounds for sanctions. Fed. R. Civ. P. 16(f).

Brooks's counsel claims the magistrate's "sanctions also leave all plaintiffs' counsel without guidelines to determine what is required of them." Brooks's counsel is well aware, however, that one requirement of <u>all</u> counsel is to obey the court's orders. The Mediation Order clearly required counsel to engage in the mediation process in good faith and warned that failure to do so could result in sanctions. The court's mediation directives or guidelines were simple and straightforward.

Plaintiff's counsel rejected defendants' opening offer as unacceptable without giving the mediator a chance to explain defendants' reasoning. Plaintiff's counsel then said Brooks would not respond to the offer. Such conduct does not constitute objective good faith. This failure to negotiate in good faith occurred before plaintiff had any indication the defendants might leave early or had less than full settlement authority.

Brooks's counsel also states that if he "made any mistake in the course of this mediation it was taking seriously the Court's order regarding mediation and insisting that opposing party do the same." (Brooks's Br. at 4-5). However, failing to engage in meaningful participation in the mediation process with opposing counsel and then unilaterally

terminating the process does not demonstrate Brooks's counsel took the court's order seriously. Defendants' failure to follow the Mediation Order does not excuse Brooks or her counsel from following the order.

Finally, Brooks's counsel contends the court should reverse the magistrate's Order because it erroneously: (1) directed the Clerk to send a copy of the sanctions order to the other judges of this court, and (2) denied Brooks's counsel a request for permission to send the judges copies of all affidavits filed in this matter. However, these documents are routinely available to all the judges of this court. As the magistrate indicated, the judges have access electronically to all filings. (June 14, 2006 Order).

Here, the magistrate's orders imposing sanctions upon counsel do not leave the court "with the definite and firm conviction that a mistake has been committed." Chakales, 79 F.3d at 728. Thus, the court finds the orders are not clearly erroneous. Id. Furthermore, the magistrate's orders are consistent with the parameters of Federal Rule of Civil Procedure 16(f). Thus, the court finds the orders are not contrary to law. See Olais-Castro, 416 F.2d at 1158 n.8. The magistrate's orders are affirmed.

IV.  **CONCLUSION**
   **IT IS THEREFORE ORDERED**:
   1. Plaintiff's Statements of Appeal of Magistrate Judge's Orders (Filing Nos. 107 and 109) are **DENIED**; and
   2. Magistrate Judge Piester's Orders (Filings No. 103 and No. 104) are **AFFIRMED** in their entirety.

DATED this 25th day of August, 2006.

BY THE COURT:


/s/ William Jay Riley
United States Circuit Judge
(Sitting by Designation)